UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

REGIONS BANK,

    Plaintiff,

v.                                                    Case No:   6:17-cv-1669-Orl-18TBS

SOMPALLI HOLDINGS, LLC, VINEEL
SOMPALLI and ORLANDO HEART &
VASCULAR CENTER, LLC,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff Regions Bank's Motion for Attorneys' Fees and Costs (Doc. 43) and Defendants' response (Doc. 46). Upon consideration, I respectfully recommend that the motion be **GRANTED in part and DENED in part**.

## Background

On September 21, 2017, Region filed three separate lawsuits against Defendants, Case No. 6:17-cv-1669-Orl-18TBS (the "1669 Case"), Case No. 6:17-cv-1670-Orl-18TBS (the "1670 Case"), and Case No. 6:17-cv-1671-Orl-18TBS (the "1671 Case") (collectively, "the lawsuits"), based on five commercial loans Regions made to Defendants. According to the Affidavit of Paul Mendola submitted in support of Regions' motion for summary judgment (Doc. 34-4), Defendant defaulted under one of the promissory notes by failing to pay all sums due and owing at the scheduled maturity date of May 11, 2017 and defaulted under another by failing to pay at the scheduled maturity date of April 17, 2017. The other obligations are triggered by cross-default provisions. While the papers also note failure to insure and pay property taxes on collateral, the motion does not provide

any evidence as to when these loans were referred for collection. The lawsuits followed.

In response to the Court's Order to Show Cause, the parties filed a joint motion to consolidate the lawsuits (Doc. 22). In their joint motion, the parties acknowledged that the lawsuits concerned two related borrowers which are owned and controlled by Defendant Vineel Sompalli, and that Defendants were asserting the same five affirmative defenses in each lawsuit, all of which were based on the same facts and arguments (1670 Case, Doc. 22-1 at 4). The parties also acknowledged that the lawsuits shared "a central issue, the enforcement of the underlying notes and guaranties, and the assignment of rents." (Id., at 5). Accordingly, the 1670 Case and the 1671 Case were consolidated into the 1669 Case on December 4, 2017 (Doc. 23).

Regions propounded written discovery and took one short deposition (Doc. 46 at 2). Defendants did not propound any discovery and took no depositions (Id.). There was one discovery motion (Doc. 24) and the parties attended a "lengthy" but unsuccessful mediation session (Doc. 33 at 2). Following the mediation, Regions filed its motion for summary judgment (Doc. 34). The Court granted the motion (Doc. 40), and then the parties stipulated to the amounts due on the loans (with the exception of attorney's fees and costs) (Doc. 41). Final judgment was entered on November 1, 2018 (Doc. 42).

## Discussion

Regions seeks an award against Defendants, jointly and severally, in the amount of $186,134.15 for fees incurred from January 23, 2017 through October 31, 2018, and $2,493.90 in taxable costs, for a total of $188,628.05. Regions asserts that the Court has already determined that it is entitled to its fees and costs; the amount sought reflects work actually performed for the client; and the hours expended were both reasonable and necessary "based on the complexity, difficulty and significance of the subject matter, as

well as the multiple commercial loans involved and the successful results obtained." (Doc. 43 at 5).

Entitlement

In its Order granting summary judgment, the Court said:

> The plain language of the Loan Documents provides that Defendants are liable to Regions for all costs, expenses, and attorneys' fees incurred in enforcing the Loan Documents. (See Doc. 34-4 at 16, 49, 51, 111, 169, 206.) Defendants are, therefore, jointly and severally liable for the legal fees and costs that Regions has incurred **in connection with this action**.

(Doc. 40 at 19 - emphasis added).[1]  Defendants do not dispute that Regions is entitled to reasonable fees and costs pertaining to this consolidated collection case.

Legal Standard for Awarding Attorneys' Fees

"In an ordinary diversity case, awards of attorney's fees are governed by applicable state law." Perkins State Bank v. Connolly, 632 F.2d 1306, 1310 (5th Cir. 1980); see also All Underwriters v. Weisberg, 222 F.3d 1309, 1311-1312 (11th Cir. 2000). Florida has adopted the federal lodestar approach as the foundation for setting reasonable fee awards. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla.1985).

The lodestar amount is determined by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the attorney providing the

---

[1] The provisions cited by the Court state:

> Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

legal services. Id. at 1151. The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Id. at 1150-51; Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir.1988). In computing the lodestar amount, the Court considers the following factors, enumerated in Rule 4-1.5 of the Rules Regulating the Florida Bar:

> (1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
>
> (4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
>
> (8) Whether the fee is fixed or contingent....

Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828, 831 (Fla. 1990), citing Rowe; see also Ottaviano v. Nautilus Ins. Co., 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010). After the lodestar is determined, the court considers whether an adjustment is in order based upon the results obtained. Norman, 836 F.2d at 1302; see also Apple Glen Inv'rs, L.P. v.

Express Scripts, Inc., No. 8:14-CV-1527-T-33TGW, 2018 WL 2945629, at *3 (M.D. Fla. May 25, 2018), report and recommendation adopted, No. 8:14-CV-1527-T-33TGW, 2018 WL 2937469 (M.D. Fla. June 11, 2018) (noting "there is a strong presumption that the lodestar is a reasonable fee," citing Bivins v. Wrap It Up. Inc., 548 F.3d 1348, 1350 (11th Cir. 2008)).

Analysis

Regions' motion is supported by the affidavit of one of its lawyers, W. Glenn Jensen (Doc. 43-1). The affidavit includes biographical information and over 90 pages of redacted billing records from the firms Roetzel & Andress, LPA ("R&A") and Winderweedle, Haines, Ward & Woodman, P.A. ("WHWW") (Id.). Regions claims the following hours at the rates shown:

| FIRM | ATTORNEY OR PARALEGAL | TOTAL HOURS | RATE PER HOUR | TOTAL FEES |
|---|---|---|---|---|
| WHWW | W. Glenn Jensen, Esq. | 13.8 | $315.00 | $4,347.00 |
| WHWW | W. Glenn Jensen, Esq. | 58.1 | $340.00 | $19,754.00 |
| WHWW | Eric F. Werrenrath, Esq. | 192.2 | $195.00 | $37,479.00 |
| WHWW | Jennifer Finch (paralegal) | 0.2 | $105.00 | $21.00 |
| R&A | W. Glenn Jensen, Esq. | 165.6 | $346.50 | $57,380.40 |
| R&A | Eric F. Werrenrath, Esq. | 325.5 | $203.00 | $66,076.50 |
| R&A | Alana Frustaci (paralegal) | 8.2 | $131.25 | $1,076.25 |
| TOTALS | | 763.6 | | $186,134.15 |

Defendant does not quarrel with the hourly rates charged but argues that Regions has not met its burden of proof because it has not offered expert testimony supporting the hours claimed, and the number of hours billed is unreasonable.

*Lack of an expert*

Regions has not tendered an affidavit from any member of the Florida Bar acting in the capacity of a fee expert. Defendants argue that Florida law requires that expert testimony be offered to substantiate the fee and a fee not supported by expert evidence is not awardable, citing Brake v. Murphy, 736 So. 2d 745, 747 (Fla. 3rd DCA 1999) ("The case law is clear that fees cannot be assessed based solely on the testimony of the attorney claiming the fee, but rather expert testimony must be offered substantiating the fee."). However, "Florida law is anything but uniform with respect to the issue of what type evidence must be presented to support an attorney's fees award." Schafler v. Fairway Park Condo. Ass'n, 324 F. Supp. 2d 1302, 1310 (S.D. Fla. 2004), aff'd, 147 F. App'x 113 (11th Cir. 2005) (noting "the Florida Supreme Court has never specifically held that such expert testimony is required.").

Even if the majority of Florida courts require expert testimony, under Eleventh Circuit law, a federal court is not required to hold an evidentiary hearing to decide a motion for attorney's fees and "a court may rely on its own expertise in determining what constitutes a reasonable and proper fee, and need not rely on the testimony of expert witnesses." LC Tech. Int'l, Inc. v. MediaRECOVER, LLC, No. 8:03-CV-2493-T-MAP, 2007 WL 9723495, at *2 (M.D. Fla. Sept. 11, 2007), citing Norman, 836 F.2d at 1303. Several courts in the Southern District that have addressed this issue have determined that "[t]o the extent [Defendants] believe[] that Florida state courts require a fee applicant to present testimony from someone other than a lawyer working on the case to establish the reasonableness of the fee award, such a rule is procedural for Erie[2] purposes and therefore is inapplicable to this action." Morris v. Arizona Beverage Co., No. 03-60907

---

[2] See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

CIV, 2005 WL 5544961, at *8 (S.D. Fla. Feb. 9, 2005); Schafler, 324 F. Supp. 2d at 1311 (assuming *arguendo* that the Florida rule as to the necessity of expert testimony as enunciated by state appellate courts constitutes a conflict with the federal rule, application of the "outcome determinative test" means that the state rule is procedural for Erie purposes); see also Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc., 697 F. Supp. 2d 1349, 1358 (S.D. Fla. 2010). I am persuaded by these cases. The absence of an expert witness affidavit lessens the evidentiary support for the fees sought, but it does not foreclose relief.

*Amount of Hours*

Plaintiff seeks reimbursement for 755.2 hours of attorney time and 8.4 hours of paralegal time, for a total of 763.6 hours. Defendants claim that this is excessive for a straightforward commercial collection case and includes time not properly billable to one's adversary. On review, and considering the Rowe factors, I agree with Defendants.

The first factor deals with the nature of the work required. Here, as summarized by Mr. Jensen:

> fees were incurred in connection with, among other things: (i) the review and analysis of the pertinent loan documents evidencing five (5) complex commercial loans secured by numerous pieces of collateral and Defendants' multiple defaults thereunder; (ii) efforts to enforce the loan documents outside of litigation through preparation of loan extension agreements; (iii) addressing defaults under loan documents for failure to insure collateral and failure to pay property taxes on collateral, (iv) preparation of three (3) Complaints, which included five (5) counts to enforce promissory notes, nine (9) counts to enforce guaranties, and four (4) counts to foreclose liens on rents; (v) preparing written discovery; (vi) preparing motion to compel discovery; (vii) deposition of defendants; (viii) preparation for and attendance at mediation; (ix) multiple good faith settlement negotiations; (x) preparation of a motion for final summary judgment; (xi) preparation for trial prior to

>granting of summary judgment, and (xii) preparing proposed Final Judgments and joint stipulation for entry.

(Doc. 43-1 at 4). As a lawyer, I represented creditors and debtors on countless commercial loan defaults, and as a judge I have presided over many such cases. Based upon my own knowledge and experience, I do not find this case to be as complex, challenging, or difficult as Regions claims. This case involves a series of unremarkable commercial loans. There is nothing "complex" about them and certainly nothing justifying over 700 hours of attorney time.

Regions sued to enforce boilerplate loan documents. In the 1669 Case, Regions sued on its preprinted form promissory note (Doc. 1-2), a U.S. Small Business Administration preprinted form promissory note (Doc. 1-4), U.S. Small Business Administration preprinted form guarantee agreements (Doc. 1-6; Doc. 1-7), a vanilla mortgage and security agreement (Doc. 1-8), and a vanilla assignment of leases, rents and profits (Doc. 1-9). In the 1670 Case, Regions sued to enforce two of its preprinted form promissory notes (Doc. 1-2 at 3; Doc. 1-8 at 1), secured by its preprinted form commercial guaranty agreement (Doc. 1-4; Doc. 1-5; Doc. 1-11; Doc. 1-12), its preprinted form mortgage agreement (Doc. 1-6), a vanilla mortgage and security agreement Doc. 1-14), that was modified by a preprinted form modification agreement (Doc. 1-15), and another vanilla assignment of leases, rents and profits (Doc. 1-16). In the 1671 Case, Regions sued to enforce its preprinted form promissory notes (Doc. 1-2; Doc. 1-6), secured by its preprinted form commercial guarantees (Doc. 1-4; Doc. 1-8), and its preprinted form mortgage (Doc. 1-9). No great amount of time, skill, or expertise was required to read and understand the relevant terms of these loan documents.

Regions seeks reimbursement for time expended *six months* before the lawsuits

were filed and well before demand letters were sent. See time entries from February through August, 2017. This time appears to be related to preparation of loan extension agreements and the like. Certainly, Regions is entitled to recover attorneys' fees for time spent on workouts as well as litigation. But, Regions has failed to show when counsels' general efforts advising their client regarding management of these loans turned into compensable time chargeable to Defendants. To the extent Regions position is that any legal work post-execution of the notes is chargeable to Defendants, I see no support for such a claim. Work performed before the defaults occurred and the loans were in collection, is not compensable in this proceeding.

The time spent preparing the lawsuits is unreasonable on its face. For unknown reasons, Regions chose to present its claim on admittedly related loans in three separate lawsuits. There is no question that the claims could have been presented in one case, as resulted after the Court issued its Order to Show Cause. One thing is clear, the approach taken by Regions' lawyers resulted in unnecessary duplication of effort. Regions is not entitled to be compensated for this duplicative time.

The amount of time claimed for prosecution of the litigation after the complaints were filed is also not justified. Given that the loan documents are boilerplate forms they should be familiar to attorneys like Mr. Jensen and his colleague, Mr. Werrenwrath, both of whom are seasoned lawyers with years of experience representing lenders on loan defaults (Doc. 43-1, pp. 96-101). Despite this depth of experience, their time entries include an exceptional amount of time to prosecute claims where one deposition was taken, one discovery motion was filed, no hearings were held, and the case was resolved on a twenty-page motion for summary judgment.

The overreach by Regions is demonstrated by the affidavit of one of Defendants' lawyers (Doc. 46-1). The two attorneys representing Defendants expended a total of 54.50 hours on these lawsuits through the date of entry of final judgment. While there is a difference in prosecuting a claim and defending it, Regions seeks reimbursement for *fourteen times* the hours spent by defense counsel. This amply demonstrates the excessiveness of the fees Regions wants Defendants to pay for.

Even a cursory review of the voluminous time records shows that the amount of time expended is unreasonable. The records include excessive time spent on tasks usually performed, if at all, by paralegals;[3] duplication of tasks by more than one timekeeper;[4] time spent on vaguely described tasks;[5] and an inordinate amount of time spent communicating with the client.[6]

Considering the fourth Rowe factor, counsel obtained for Regions the desired (and no doubt expected) result. That said, the attorneys for Regions did not achieve any exceptional result. These were form notes with cross-default provisions. The amounts involved, while not insignificant, were not great based upon my own experience representing debtors and creditors, and the subject matter of the representation, and the

---

[3] For example, numerous references to "searching public records" for recorded mortgages and other security instruments, regarding status of past-due tangible personal property taxes and notices regarding tax sale, and for information regarding HOA.

[4] For example, from November 14 to November 21, 2017, counsel spent a total of 8.5 hours on the required case management report. Mr. Jensen spent 3.10 hours "work[ing] on issues regarding the lawsuit and pretrial conference;" Mr. Werrenwrath then spent 1.30 hours drafting the case management report while Mr. Jensen spent .70 hours "continuing to work on preparations for the case management report." Additional hours were spent by both counsel "finalizing case management report for filing" and "working on issues regarding the case management report."

[5] For example, "attention to issues regarding case management in litigation:" "work on issues regarding [redacted]," and multiple emails and telephone calls with client "regarding [redacted]."

[6] Communication with the client that moves a case forward, such as to formulate responses to discovery is, of course, essential and billable. Communication which is solely for the benefit of the *client* however, such as drafting client-required litigation plans or status reports, is not an expense reasonably shifted to one's adversary. The amount of client communication here, most of which is redacted (but billed) is not shown to have been necessary to advance the case and is therefore not chargeable to Defendants.

responsibility involved in the representation, is nothing out of the ordinary for counsel who, as here, regularly represent lenders in commercial business matters. Put simply, Regions' lawyers expended an amount of time on the lawsuits that goes far beyond what is reasonable, customary, or fair to pass along to Defendants. While counsels' efforts achieved the desired result, and Regions is certainly entitled to staff the lawsuits as it sees fit, the terms of the loan documents only allow for reimbursement of *reasonable* legal fees and costs. Consequently, a reduction for unnecessary time charged is warranted.

As for the remaining factors, Regions presents no information regarding the likelihood that acceptance of this case precluded other employment (factor two), or the existence of any time limitations (factor five). I assume those factors are neutral. As for the customary fee (factor three), the nature of the professional relationship (factor six), and whether the fee is fixed or contingent (factor eight), counsel says the fees were discounted by thirty percent pursuant to a contractual arrangement between counsel and Regions (Doc. 43-1, ¶ 8). This shows that Regions is an established client which enjoys reduced rates. While this supports the reasonableness of the claimed rate, it is neutral in the analysis of reasonable hours expended.

Considering all of the above, I do not find the number of hours claimed to be reasonable and a reduction in the time claimed is required. Calculating an appropriate reduction, however, is not so straight forward. In the normal course, the Court would review the time sheets and excise each hour (or portion thereof) found to be non-compensable. Here, Regions has submitted 90 pages of billing containing hundreds of individual entries. The separate review of each time entry would impose a significant burden on the Court's time. Additionally, many of the entries contain vague or redacted

explanations making individual review impossible. Generally, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board-cut." Bivins, 548 F.3d at 1350, citing Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir.1994). If the district court employs an across-the-board cut, it must "provide a concise but clear explanation of its reasons for the reduction." Loranger, 10 F.3d at 784. For the reasons set forth above, I find an across the board reduction of 50% to be appropriate here. After this reduction is made, Regions is still being compensated for more than six times the number of hours expended by the lawyers who represented Defendants.

*Rates*

Turning to the reasonableness of the hourly rates, Regions staffed the case with two very well qualified lawyers and two paralegals. Defendants do not object to the rates charged (which are discounted) and I likewise find these rates to be consistent with rates charged in similar commercial litigation prosecuted in this district by these attorneys. See Regions Bank v. Campus Developmental Research Sch., Inc., 6:15-CV-1332-ORL-DAB, 2016 WL 5946900, at *5 (M.D. Fla. Aug. 8, 2016), report and recommendation adopted, 2016 WL 5933409 (M.D. Fla. Oct. 12, 2016). I therefore calculate the lodestar as follows:

| FIRM | ATTORNEY OR PARALEGAL | TOTAL HOURS | RATE PER HOUR | TOTAL FEES |
|---|---|---|---|---|
| WHWW | W. Glenn Jensen, Esq. | 6.9 | $315.00 | $2,173.50 |
| WHWW | W. Glenn Jensen, Esq. | 29.05 | $340.00 | $9,877.00 |
| WHWW | Eric F. Werrenrath, Esq. | 96.1 | $195.00 | $18,739.50 |
| WHWW | Jennifer Finch (paralegal) | 0.1 | $105.00 | $10.50 |
| R&A | W. Glenn Jensen, Esq. | 82.8 | $346.50 | $28,690.20 |

| | | | | |
|---|---|---|---|---|
| R&A | Eric F. Werrenrath, Esq. | 162.75 | $203.00 | $33,038.25 |
| R&A | Alana Frustaci (paralegal) | 4.1 | $131.25 | $538.12 |
| TOTALS | | 381.8 | | $93,067.07 |

Costs

As the prevailing party and also under the terms of the loan documents, Regions is entitled to its costs. In its Bill of Costs (Doc 43-2), it seeks a total of $2,493.90, consisting of $1,200.00 for three filing fees, $540.00 for service of summonses on each Defendant for the three suits, and $753.00 relative to the deposition transcript of Defendant which it contends was necessarily obtained for use in the case. Although Defendants argue that only one filing fee and service of one set of summonses was necessary, and I agree that all the loans could have been enforced in one suit, this does not mean that the costs actually expended on filing fees for separate cases on separate loans is necessarily not taxable. And, I have already recommended a significant reduction in Regions' fee claim due to the duplication of effort caused by filing three lawsuits. Under Rule 54(d)(1), the presumption is in favor of awarding costs. Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc., 249 F.3d 1293, 1296 (11th Cir. 2001) (citation omitted). The Court, in its discretion, should allow the costs.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) The motion be **GRANTED in part, and DENIED, in part;**

(2) The Court award attorneys' fees to Plaintiff, and against Defendants, jointly and severally, in the total amount of **$93,067.07**; and

(3) The Clerk tax **$2,493.90** in costs.

- 14 -

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on December 18, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record